IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:25-CV-596-FL-BM

| | | |
|---|---|---|
| CHRISTOPHER VELTRI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND RECOMMENDATION** |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Christopher Veltri ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and disability insurance benefits ("DIB"). This matter is before the court on Plaintiff's brief [DE-8] ("Pl.'s brief") seeking judgment in his favor, Defendant's motion for remand to the Commissioner for further administrative proceedings [DE-13] ("Def.'s Mot."), and Plaintiff's response in opposition [DE-14] ("Pl.'s Resp."). The time for filing responsive briefs has expired pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The brief and motion were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1). Having reviewed and considered the record, the administrative transcript, the filings by the parties, and the applicable law, it is recommended that Plaintiff's brief [DE-8] be allowed, Defendant's motion for remand [DE-13] be denied, the Commissioner's final decision be reversed, and this case be remanded to the Commissioner for a determination of benefits.

## I. STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and DIB on October 26,

2018, alleging disability beginning September 30, 2015. Transcript of Proceedings ("Tr.") 86, 181-87. His claim was denied initially and upon reconsideration. Tr. 80-92. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 93-113. A hearing before ALJ April M. Wexler ("ALJ Wexler") was held on August 20, 2019, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. Tr. 29-79. On September 20, 2019, ALJ Wexler issued a decision denying Plaintiff's request for benefits. Tr. 12-28.

On September 20, 2019, Plaintiff requested a review of the ALJ's decision by the Appeals Council. Tr. 177-80. On October 28, 2019, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Plaintiff then filed a complaint in the Western District of New York seeking review of the then-final administrative decision. *See Veltri v. Commissioner of Social Security*, 1:19-cv-1500-JJM (WDNY) (filed November 6, 2019). On March 3, 2021, United States Magistrate Judge Jeremiah J. McCarthy ("Judge McCarthy") issued a Decision and Order, granting Plaintiff's motion for judgment on pleadings and remanding the case to the Commissioner for further proceedings. Tr. 1908-16; *see* [DE-18], *Veltri v. Commissioner of Social Security*, 1:19-cv-1500-JJM (WDNY). Judge McCarthy found remand appropriate because "the ALJ erred when she failed to evaluate an October 20, 2017 PTSD disability benefits questionnaire completed by William A. Reynolds, Psychologist for the Veterans Administration . . . in connection with a compensation and pension to determine plaintiff's entitlement to veteran's benefits." Tr. 1911.

On December 21, 2021, a second administrative hearing was held before ALJ Paul Georger ("ALJ Georger") at which Plaintiff, represented by counsel, and a VE appeared and testified. Tr. 1844-84. On March 1, 2022, ALJ Georger issued a decision denying Plaintiff's request for benefits. Tr. 1822-43.

On June 28, 2022, Plaintiff filed a complaint in this court seeking review of the final administrative decision. *See Veltri v. Kijakazi*, 7:22-CV-101-BM, (June 28, 2022). On February 14, 2023, the undersigned issued an order granting the consent motion to remand the case pursuant to sentence four of 42 U.S.C. § 405(g) for additional proceedings. Tr. 2153-54.

On January 31, 2024, a third administrative hearing (the "third administrative hearing") was held, this time before ALJ Adriene Porter (the "ALJ" or "ALJ Porter"), at which (i) Plaintiff, represented by counsel; (ii) VE Lakeisha Rogers ("VE Rogers"); and (iii) a witness, Lauren Conley, each appeared and testified. Tr. 2080-2128. On May 16, 2024, the ALJ issued a decision denying Plaintiff's request for benefits. Tr. 2053-79. Plaintiff then requested a review of the ALJ's decision by the Appeals Council, and on October 31, 2024, the Appeals Council declined to assume jurisdiction. Tr. 2045-52. Plaintiff then filed his second complaint in this court, and third complaint in total, seeking review of the final administrative decision. [DE-1].

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more

than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the

claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(4).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 2072. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful employment since September 30, 2015, the alleged onset date, though his date last insured, December 31, 2017. Tr. 2059.

Next, at step two, the ALJ determined Plaintiff had the following severe impairments: post-traumatic stress disorder; degenerative disc disease of the lumbar spine; and left labral tear with bilateral shoulder pain. Tr. 2059. The ALJ also found Plaintiff had the following non-severe impairment: neuropathy. Tr. 2059. Yet at step three, the ALJ concluded these impairments, both physical and mental, were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 2059.

Applying the technique prescribed by the regulations, the ALJ found that Plaintiff's mental

impairments have resulted in moderate limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself. Tr. 2060-61.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the ability to perform light work[1] with the following limitations:

> he must be able to alternate position once per hour. He can remain on task whether sitting or standing as long as the job can be performed either sitting or standing. He can frequently operate hand controls, push and pull with the left upper extremity. He can occasionally reach overhead and frequently reach in all other directions with the left upper extremity. He can frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. He can occasionally climb ladders, ropes, or scaffolds. He could frequently, but not constantly, work around unprotected heights or moving mechanical parts. He can understand, remember, or carry out simple task instructions consistent with a GED reasoning level of 3 as that is defined in the DOT and can make simple, work-related decisions in jobs that require no more than occasional interaction with supervisors and coworkers, and no interaction with the general public.

Tr. 2061.

In making this assessment, the ALJ found Plaintiff's statements about his limitations not entirely consistent with the medical evidence and other evidence in the record. Tr. 2064.

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. "Sitting" generally totals about 6 hours of an 8-hour workday. *Id.* A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of his past relevant work as an infantry weapons crewmember or data entry clerk. Tr. 2071. Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff was capable of making an adjustment to other work that existed in significant numbers in the national economy. Tr. 2071-72.

At the third administrative hearing on January 31, 2024, VE Rogers testified regarding Plaintiff's past work experience. Tr. 2117-18. VE Taylor was asked questions by ALJ Porter regarding hypothetical individuals resembling Plaintiff in age, education, prior work experience, and RFC. Tr. 2118-22. Specifically, the ALJ asked whether an individual with Plaintiff's relevant age, education, prior work experience, and RFC, including a limitation to having only "occasional interaction with supervisors and coworkers" could perform Plaintiff's past work. Tr. 2118-19. VE Rogers testified that such an individual could not. Tr. 2119. Yet VE Rogers stated that, given all of these factors, the individual could perform the requirements of representative light, unskilled occupations such as router (DOT #222.587-038), mail clerk (DOT #209.687-026), or routing clerk (DOT #222.687-022). Tr. 2119-20.

As a follow up, Plaintiff's counsel asked VE Rogers whether for the jobs cited, the individual would be able to perform the jobs if he "could not tolerate more than occasional contact with supervisors and coworkers in the first 30 days of employment, during orientation, and training, and while gaining proficiency in performing their job." Tr. 2123-24. The VE responded that the individual could not. Tr. 2124. The VE did not ask any follow-up questions on this issue. *See id.* In a final colloquy, the ALJ confirmed with VE Rogers that her testimony at the third administrative hearing was consistent with the DOT and its companion publications, except that

her testimony regarding interactions with others, directional reaching, bilateral reaching, distinguishing between climbing ladders and stairs, alternating positions, sit stand options, time off task, and absenteeism was based on her education and experience as a rehab counselor and researcher. Tr. 2126.

## V. OVERVIEW OF PLAINTIFF'S CONTENTIONS AND DEFENDANT'S MOTION

In this case, Plaintiff alleges the ALJ erred: (1) by failing to "provide evidence demonstrating that [Plaintiff] could perform other work that exists in the national economy because the ALJ did not address the [VE's] testimony that an individual limited to no more than occasional interaction with supervisors and coworkers could not learn how to perform the cited occupations"; (2) by "improperly evaluat[ing] the Department of Veterans Affair's disability decision regarding [Plaintiff's] PTSD with depressive disorder"; and (3) because the Court "cannot meaningfully review the ALJ's evaluation of Dr. William Reynolds's opinion regarding [Plaintiff's] PTSD with depressive disorder." Pl.'s brief [DE-8] at 1.[2]

The Commissioner does not contest that the ALJ erred, but "requests that this Court reverse his final decision and remand this case for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g)," arguing that "remand . . . for calculation of benefits, is [in]appropriate." [DE-13] at 1-2.

## VI. DISCUSSION

### A. Vocational Expert's Testimony

Plaintiff contends the ALJ erred by failing to "provide evidence demonstrating that

[2] Except for citations to the Transcript of Proceedings ("Tr."), all citations to documents using the docket entry number [DE-] provided in the court's docket will specify the page number automatically assigned by the CM/ECF system, rather than the page number, if any, specified in the original document.

[Plaintiff] could perform other work that exists in the national economy because the ALJ did not address the vocational expert's testimony that an individual limited to no more than occasional interaction with supervisors and coworkers could not learn how to perform the cited occupations." Pl.'s brief [DE-8] at 1.

"The decision of whether to reverse and remand for benefits or reverse and remand for a new hearing is one that 'lies within the sound discretion of the district court.'" *Cottle v. Kijakazi*, No. 7:20-CV-227-BO, 2022 WL 329878, at *3 (E.D.N.C. Feb. 3, 2022) (quoting *Edwards v. Bowen*, 672 F. Supp. 230, 237 (E.D.N.C. 1987)). "Federal courts . . . have awarded disability benefits without remand where the record clearly establishes the claimant's entitlement to benefits and another ALJ hearing on remand would serve no useful purpose." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 111 (4th Cir. 2020) (citing *Hines v. Barnhart*, 453 F.3d 559, 567 (4th Cir. 2006); *Crider v. Harris*, 624 F.2d 15, 17 (4th Cir. 1980); *Revels v. Berryhill*, 874 F.3d 648, 668-69 (9th Cir. 2017); *Green-Younger v. Barnhart*, 335 F.3d 99, 109 (2d Cir. 2003); *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 865 (6th Cir. 2011)). "When '[o]n the state of the record [Plaintiff's] entitlement to benefits is wholly established,' reversal for award of benefits rather than remand is appropriate." *Argeris v. Colvin*, 195 F. Supp. 3d 812, 817-18 (E.D.N.C. 2016) (first alteration in original) (quoting *Crider*, 624 F.2d at 17).

Plaintiff requests that the court reverse the ALJ decision and award benefits reasoning that

> [t]his case has been pending for over eight years and has already been remanded twice. There is no need to reopen the record because the evidence of record shows the combined effect of [Plaintiff's] disabilities, including PTSD and ulnar nerve neuropathy, resulted in disabling work-related limitations, including the ability to attend work and maintain sufficient task persistence.

[DE-8] at 29.

The Commissioner requests the court reverse the final decision and remand this case for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g), noting that "[t]he parties disagree regarding the terms of a sentence four remand in this case." Def.'s Mot. [DE-13] at 2. The Commissioner explains that he "is amenable to remanding this case for further administrative proceedings, including development of the vocational issues." *Id.* While the Commissioner concedes that "a prolonged history may favor an award from this Court," he notes that "those are not the only considerations relevant to ordering an award." *Id.* The Commissioner contends that "conflicts remain in the evidence and s]uch factual questions should be answered by the agency, not the court." *Id.* at 3. Specifically, the Commissioner highlights that the "ALJ evaluated numerous medical records that described varying degrees of mental and physical limitations." *Id.* The Commissioner juxtaposes the findings of Nakita Dave, M.D., who concluded that "Plaintiff had mild-to-moderate physical limitations" and Susan Santarpia, Ph.D., who found that Plaintiff "had no more than moderate limitations" with those of psychologist William Reynolds who "felt Plaintiff would be too limited to work." *Id.* (citing Tr. 1761-62, 1772). The Commissioner also contrasts Plaintiff's "reported difficulties with interacting and that he had trouble with memory, concentration, and focus" with "evidence in the record indicat[ing] that Plaintiff socialized with friends and family, went to the gun range, and worked on his car, and he took college classes." *Id.* (citing 1761-62, 1293). The Commissioner concludes that "[f]or the Court to award benefits, as Plaintiff requests, the Court would need to assume the role of factfinder and resolve these conflicts" and thus, "remand for further administrative proceedings, not reversal for payment, would be appropriate." *Id.* at 3-4.

One of the limitations ALJ Porter included in the RFC was that Plaintiff "can make simple,

work-related decisions in jobs that require no more than occasional interaction with supervisors and coworkers, and no interaction with the general public." Tr. 2061. The ALJ included this limitation in the hypothetical she presented to the VE. Tr. 2119.

Specifically, the ALJ and VE Rogers engaged in the following colloquy at the third administrative hearing on January 31, 2024:

> ALJ: [After providing the other limitations from the RFC that would subsequently be used in her ALJ decision], . . . [h]e would be limited to making simple work-related decisions and again, he would have occasional interaction with supervisors and coworkers, none with the general public. Would there be any work available -- excuse me. Would the past work of data entry clerk be available with these limitations?
>
> VE: No, Your Honor.
>
> ALJ: Would there be any other type of work available for someone of these limitations?
>
> VE: Yes. And the first would be, router, 222.587-038, SVP 2, exertion level is light. . . . Mail clerk, 209.687-026, SVP is 2, exertion level is light. . . . [a]nd then, the next one, Your Honor, is routing clerk, routing clerk, 222.687-022, SVP 2, exertion level is light.
>
> . . .
>
> ALJ: And if a person in these jobs were to be absent on a regular basis, how many absences might be tolerate?
>
> VE: No more than one absence per month. But if that were consistent, it would likely not be tolerate.
>
> ALJ: Would these or any other jobs be available if the individual could have no interaction with coworkers, as well as the general public?
>
> VE: No interaction at all, Your Honor?
>
> ALJ: Yes.
>
> VE: No. No work.

ALJ: Basically, an isolated work space.

VE: Yes, No, no.

ALJ: Okay. All right. I think that addresses all the things that I wanted to know about. [Plaintiff's Counsel], do you have any questions for [VE] Rogers?

Tr. 2119-20.

Plaintiff's counsel subsequently had the following colloquy with VE Rogers:

Counsel: Okay. Now for the jobs that you cited, if you assumed that a person could not tolerate more than occasional contact with supervisors and coworkers in the first 30 days of employment during orientation, and training, and while gaining proficiency in performing their job, could they do those jobs?

VE: Are you saying they would -- it would be less than occasional?

Counsel: No more than occasional contact. So up to occasional for the first 30 days.

VE: They would likely need more contact than occasional in the first 30 days.

Counsel: Okay. And so then, they would not be able to do those jobs then?

VE: Based on that scenario, probably not. No.

Tr. 2123-24.

ALJ Porter did not ask any further questions at the third administrative hearing regarding the apparent incompatibility of the ALJ limitation to only "occasional interaction with supervisors and coworkers" and VE Roger's testimony regarding the orientation and training requirements of the jobs he had cited. Yet, subsequent to this portion of the administrative hearing, ALJ Porter confirmed that the DOT and its companion publications do not address interactions with others and that VE Rogers testimony on this point was based on her education and experience as a rehab

counselor and researcher. Tr. 2126.

The Commissioner contends that "conflicts remain in the evidence[ and s]uch factual questions should be answered by the agency, not the court." Def.'s Motion [DE-13] at 3. Yet the dispositive factual determination on the question of Plaintiff's disability is whether there was any substantial evidence that could support ALJ's Step Five finding that "[t]hrough the date last insured, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." Tr. 2071. The testimony of VE Rogers, which provided the only substantial evidence in this case on the jobs an individual with Plaintiff's RFC and other relevant characteristics could or could not perform, provided that the RFC's limitation to "no more than occasional interaction with supervisors and coworkers" (Tr. 2118-19, 2061) was incompatible with jobs available in the national economy. Specifically, VE Rogers testified that an individual with Plaintiff's RFC and other relevant characteristics could not perform the orientation and training requirements to gain proficiency in the jobs she cited. Tr. 2123-24. There is, therefore, no substantial evidence in the record, which could support a finding that an individual with Plaintiff's RFC and other relevant characteristics could perform the requirements of the jobs VE Rogers cited. There is also no substantial evidence in the record of other jobs in the national economy that Plaintiff could perform. After three administrative hearings, the Commissioner has had ample opportunity to develop evidence in support of its findings at Step Five of the sequential evaluation process. Accordingly, the undersigned does not find that remand would serve any useful purpose. *Cf. Arakas*, 983 F.3d at 111.

To be clear, the undersigned does not find a limitation to no more than occasional

interaction with supervisors and coworkers represents an inherent conflict with unskilled jobs. The Social Security Regulations provide that a person can usually learn to do an unskilled job within 30 days. 20 C.F.R. § 404.1568. There could, therefore, feasibly be scenarios where an individual would not need the full 30 days to learn the relevant jobs or could complete the necessary orientation and training in a manner that was consistent limitation to no more than occasional interaction with supervisors and coworkers.

The relevant principle can be illustrated by contrast with a similar but distinguishable case, *Rosado v. Berryhill*. No. 4:16-cv-173, 2018 U.S. Dist. LEXIS 21980, at *21 (E.D. Va. Jan. 22, 2018), *report and recommendation adopted by* No. 4:16-cv-173, 2018 U.S. Dist. LEXIS 21958, at *2 (E.D. Va. Feb. 8, 2018). In that case, the plaintiff presented expert testimony by Paula Santagati ("Ms. Santagati") that:

> based on her experience, the limitation of only occasional interaction with the public, co-workers, and supervisors would preclude Plaintiff's performance of all work given that in "most if not all companies" and "even the most entry level jobs have a probationary period" for new employees that requires more than occasional social interaction during which they work closely with co-workers and supervisors to receive training and guidance.

*Rosado v. Berryhill*, No. 4:16-cv-00173, 2018 U.S. Dist. LEXIS 21980, at *21.

The ALJ in *Rosado* then asked the court appointed impartial VE, Robert Edwards ("Mr. Edwards") to respond to "Ms. Santagati's testimony regarding the probationary periods, to which Mr. Edwards responded that for simple jobs such as sorter, inspector, small product assembler and office helper, the simplistic, unskilled nature of the position necessarily meant that the probationary or training period would be relatively short and require minimal communication." *Id.* at 22. The court in *Rosado* rejected the plaintiff's argument that "the ALJ impermissibly relied upon the testimony of Mr. Edwards and erred by rejecting the testimony of Ms. Santagati," specifically

finding that "the ALJ's explanation for rejecting Ms. Santagati's testimony [based on the rebuttal testimony by Mr. Edwards] was supported by substantial evidence, as the testimony provided by Mr. Edwards at both the initial hearing and the supplemental hearing provided a sufficient basis for the findings regarding the specific jobs available for someone with the Plaintiff's stated RFC." *Id.* at *48.

Yet here, the court need not "re-weigh conflicting evidence." *Mastro*, 270 F.3d at 176. Based on the instant RFC, there is no evidence, let alone substantial evidence, that Plaintiff could perform the orientation and training requirements of jobs that exist in significant numbers in the national economy or that she could perform such jobs without completing such orientation and training requirements. To be clear, the instant finding applies no broader than the specific facts and circumstances of this case.

The Commissioner highlights that the "ALJ evaluated numerous medical records that described varying degrees of mental and physical limitations." [DE-13] at 3. Yet none of these records indicate that there are jobs in the national economy where Plaintiff could satisfy the necessary orientation and training requirements in light of her RFC. The Commissioner has also not provided any basis to find that the ALJ's decision lacks substantial evidence for not providing a more permissive RFC. *See id.* at 3-4. Because Plaintiff's entitlement to benefits is wholly established by the record, it is recommended that this matter be remanded for a determination of benefits. *See Cottle*, 2022 WL 329878, at *3.

In making this recommendation, the undersigned also considered that Plaintiff's claim for disability has been pending for almost eight years, during which he has been forced to undergo three ALJ hearings and file three federal suits due to the agency's error. *See Arakas*, 983 F.3d at

112 ("Given our finding of [the plaintiff's] disability, remanding the case for yet another ALJ hearing would be not only pointless, but also unjust. Despite having a meritorious claim, [the plaintiff] has been denied disability benefits and forced to undergo costly litigation for ten years, solely because of the agency's error. After multiple denials and reconsideration requests, two ALJ hearings, and two federal suits, we simply cannot delay justice any longer. Therefore, we reverse and remand the case to the Commissioner for a calculation of disability benefits.").

**B. Remaining arguments**

As the undersigned has recommended reversal and remand to the Commissioner for a determination of benefits for the reasons provided above, consideration of the remaining arguments in Plaintiff's brief would be moot.

## VII. CONCLUSION

For the reasons stated above, IT IS RECOMMENDED that Plaintiff's brief [DE-8] be ALLOWED, Defendant's motion for remand to the Commissioner for further administrative proceedings [DE-13] be DENIED, the Commissioner's final decision be reversed, and this case be remanded to the Commissioner for a determination of benefits.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **September 11, 2026**, to file written objections to this Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines

specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by the **earlier of 7 days from the filing of the objections or September 18, 2026**.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 4th day of September, 2026.

Brian S. Meyers
United States Magistrate Judge